**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SAMUEL DAVIS,**

                    **Plaintiff,**            **07 Civ. 6592 (JGK)**

          **- against -**                     **MEMORANDUM OPINION**
                                              **AND ORDER**

**CORRECTION OFFICER RHOOMES, ET AL.,**

                    **Defendants.**

---

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Samuel Davis ("plaintiff"), brings this

action pursuant to 42 U.S.C. § 1983 against nine employees of

the Mid-Orange Correctional Facility ("Mid-Orange") alleging

that they violated his constitutional rights and retaliated

against him for filing a grievance and this lawsuit during his

incarceration at Mid-Orange.  On December 21, 2007, the

plaintiff was transferred from Mid-Orange to Woodbourne

Correctional Facility ("Woodbourne"), where he alleges that

prison officials at Woodbourne also retaliated against him for

his litigation against Mid-Orange prison officials.  The

plaintiff seeks a preliminary injunction to enjoin the

defendants and Woodbourne prison officials from continuing to

retaliate against him.  The plaintiff has now been transferred

from Woodbourne to Franklin Correctional Facility ("Franklin").

The defendants have moved to dismiss the plaintiff's complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure
to state a claim upon which relief can be granted.

**I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007).  Where, as here, the plaintiff is proceeding pro se,
although the same standards for dismissal apply, a court should
give the pro se litigant special latitude in responding to a
motion to dismiss.  See Ainbinder v. Potter, 282 F. Supp. 2d
180, 184 (S.D.N.Y. 2003) (citing McPherson v. Coombe, 174 F.3d
276, 279 (2d Cir. 1999)).  The Court should not dismiss the
complaint if the plaintiff has stated "enough facts to state a
claim to relief that is plausible on its face."  Bell Atl. Corp.
v. Twombly, 127 S. Ct. 1955, 1974 (2007); see also Iqbal v.
Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

Because both parties have provided the Court with
affidavits and exhibits on the issue of exhaustion that go
beyond the information provided in the pleadings, the
defendants' motion to dismiss is considered to be a motion for
summary judgment for the purpose of determining exhaustion.  See
Collins v. Goord, 438 F. Supp. 2d 399, 412 (S.D.N.Y. 2006).  A
court should also give the pro se litigant special latitude in

2

responding to a summary judgment motion.  See McPherson, 174
F.3d at 280-81.  In particular, the pro se party must be given
express notice of the consequences of failing to respond
appropriately to a motion for summary judgment.  See id. at 281;
Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir.
1999).  The defendants provided the plaintiff with express
notice under Local Rule 12.1 that the motion to dismiss could be
treated as a motion for summary judgment and that a failure to
respond could result in the dismissal of his claims without a
trial.  The plaintiff filed a timely response to the defendants'
motion, including an affirmation and a statement of alleged
undisputed facts.

## II.

For the purposes of deciding the motion to dismiss, the
following facts alleged in the amended complaint are accepted as
true.  The plaintiff is an inmate who was incarcerated at Mid-
Orange until December 21, 2007, when he was transferred to
Woodbourne.  On May 5, 2008, the plaintiff was again transferred
from Woodbourne to Franklin.  The events which form the basis of
the plaintiff's amended complaint in this action occurred at the
Mid-Orange facility.

In March 2007, over a period of three weeks, the plaintiff
made repeated attempts to obtain a statutory law book from the
Mid-Orange Law Library which he needed to prepare a complaint,

but was told by the Law Library clerk that the book was out.
(Am. Compl. ¶ 18-28.)  On March 22, 2007, the plaintiff
approached Law Library Officer Rhoomes ("Rhoomes") about the
book, who told him that it had been checked out by an inmate
worker and that he would have to wait up to thirty days for the
book to be returned.  (Am. Compl. ¶ 24-25.)  The plaintiff
returned to the library two days later to see if the book was
available, but was told that it was still out.  (Am. Compl. ¶
28.)  He complained about the missing book to Rhoomes, who
replied: "What you want me to do."  (Am. Compl. ¶ 28.)

On March 26, the plaintiff filed his first grievance
against Rhoomes, Grievance No. 9263, for allegedly denying him
meaningful access to Law Library resources in order to prepare
and file legal papers.  (Am. Compl. Ex. A.)  This grievance was
informally resolved by Mid-Orange Deputy Superintendent for
Programs Robert Jones ("Jones"), who met with the plaintiff to
inform him that the access issue had been resolved and that the
Law Library would no longer allow law books to be taken out of
the Law Library unless they were returned the next morning.
(Am. Compl. Exs. A-1, H.)  Jones also told the plaintiff that
there would be no harassment or retaliation against him by
Rhoomes or anyone else for filing a grievance against her.

On March 29, however, when the plaintiff went to the
library to retrieve the book, Rhoomes verbally harassed the

plaintiff and followed him around the Law Library.  (Am. Compl.
¶ 32.)  Rhoomes apparently became upset at the plaintiff and
summoned Correction Sergeant Degnan ("Degnan"), who appeared and
ordered the plaintiff to leave the library.  The plaintiff had
also brought Rhoomes seventy-one pages of legal papers to be
photocopied, which he claims he was not able to review before
Degnan ordered him to leave the library.  Rhoomes then left the
papers on top of her desk, where she left them unattended for
more than an hour.  (Am. Compl. ¶ 34.)  Later that day, the
plaintiff wrote to Jones to inform him of Rhoomes's conduct
toward him and prepared another grievance against Rhoomes,
Grievance No. 9266, alleging that she harassed him and
mishandled his legal papers in retaliation for the plaintiff's
filing of a grievance against her.  (Am. Compl. ¶ 33, Exs. B,
C.)  On March 30, Rhoomes issued an Inmate Misbehavior Report
("IMR") against the plaintiff for allegedly creating a
disturbance during his library visit.  (Am. Compl. ¶ 40, Ex. I.)
Correction Officer Andino ("Andino"), who had been present in
the library during the plaintiff's visit, endorsed the IMR as an
employee witness. (Am. Compl. Ex. I.)  The IMR was served upon
the plaintiff on April 2.  (Am. Compl. ¶ 40, Ex. I.)

On March 30, when the plaintiff returned to the Law Library
to retrieve his legal papers and photocopies, Rhoomes again
verbally harassed him.  The plaintiff then took his papers back

to his housing unit and discovered that four pages of the papers were missing.  (Am. Compl. ¶ 35, 70.)  He then filed Grievance No. 9265, dated March 30, against Rhoomes for retaliation and the destruction of his legal papers.  (Am. Compl. ¶ 36, Ex. D.)  Grievance No. 9265 also states that an "unknown Sergeant," who has been identified as Degnan, ordered the plaintiff to leave the library before he could check his legal papers.  (Am. Compl. Ex. D.)

Both Grievance No. 9265 and No. 9266 were denied by Superintendent Diane Van Buren ("Van Buren"), and the plaintiff appealed both denials.  (Am. Compl. ¶ 37, 39, Ex. E, G-1.)  In his appeal statement in Grievance No. 9266, he included new allegations of Rhoomes having filed a "bogus Misbehavior Report" against the plaintiff on March 30, 2007.  (Am. Compl. Ex. E.) (emphasis in original)  His appeal statement for Grievance No. 9265 also mentions having met with Jones to show him the missing pages of his legal papers and claims that Van Buren improperly ignored his evidence and credited Rhoomes' testimony.  (Am. Compl. Ex. G-1.)  Both denials were affirmed on appeal by the Central Office Review Committee ("CORC").  (Am. Compl. ¶ 38-39, Exs. G, H.)

In a disciplinary hearing held before Correction Lieutenant Faliski ("Faliski") on April 11, the plaintiff was found guilty of interference with an employee and refusing a direct order.

(Am. Compl. ¶ 40.)   The resulting penalty was the loss of commissary, package and phone privileges, and recreation for fifteen days.   (Am. Compl. ¶ 126, Ex. K.)   The plaintiff states that he did not appeal that determination because Faliski harassed him and threatened to give him additional write-ups if the plaintiff appealed the decision.   (Am. Compl. ¶ 41, 55c.)

In June 2007, the plaintiff filed his first complaint in this action.   (Am. Compl. ¶ 42.)   The complaint alleged that Rhoomes, Andino, Degnan, and Faliski harassed and retaliated against the plaintiff in violation of the First, Eighth, and Fourteenth Amendments.   The complaint also asserted claims against Van Buren in her supervisory capacity.   Rhoomes, Andino, Degnan, and Faliski received service of the summons and complaint on October 2, 2007.   (Am. Compl. ¶ 45, Exs. Q, R, S, T.)   Shortly afterward, on October 5 and 16, the plaintiff received two IMRs which he claims were retaliatory.   (Am. Compl. ¶ 45.)   The plaintiff also alleges that Faliski improperly added a weapons charge to the October 5 IMR for the plaintiff's possession of rocks and a net bag, which raised the status of his disciplinary proceeding from Tier II to Tier III.   (Am. Compl. ¶ 48.)   He further alleges that his disciplinary hearing held before Deputy Superintendent for Programs Jacobsen ("Jacobsen") on October 15 and 16 deprived him of a fair hearing because Jacobsen ignored the fact that the weapons charge had

been added and because he lacked substantial evidence to support the decision.  (Am. Compl. ¶ 49.)  The plaintiff had another disciplinary hearing before Correction Captain Niles ("Niles") on October 22, which he similarly charges as having been unfair and based on insufficient evidence.  (Am. Compl. ¶ 53-54.)

The plaintiff submitted another grievance on November 23 ("November 23 Grievance") alleging that Faliski and other correction officers had added fabricated weapons charges to his October 5 and 16 IMRs and that his disciplinary hearings on October 16 and 22 had not been fair.  (Am. Compl. Ex. Y; Pl.'s Opp. Ex. Q.)  The IMR that included the weapons charge was signed by Correction Officer Kornies ("Kornies").  (Am. Compl. Ex. Y.)  The plaintiff received a memo dated November 27 informing him that his grievance was untimely.  (Am. Compl. Ex. Y-2.)  According to the memo, DOCS regulations require all grievances to be submitted within twenty-one calendar days of the alleged occurrence.  (Am. Compl. Ex. Y-2.)  The regulations further provide that an exception to the time limit may not be granted more than 45 days after the alleged occurrence.  (Am. Compl. Ex. Y-2.)  Accordingly, the memo informed the plaintiff that he could submit mitigating circumstances to request an exception to the time limit for his grievance based on the October 16 IMR, but that he was time-barred from grieving the October 5 IMR.  (Am. Compl. Ex. Y-2.)  The plaintiff offered

mitigating circumstances in connection with the October 16 IMR, which were denied as insufficient on November 28. (Am. Compl. Ex. Y-7.) On December 1, the plaintiff filed Grievance No. 30323 to contest the decision denying the November 23 Grievance as untimely. This grievance was denied by Van Buren, and the denial was affirmed on appeal by the CORC on January 23, 2008. (Am. Compl. Ex. Z.) The plaintiff filed an Amended Complaint on February 5, 2008, adding additional claims of retaliation and due process violations against defendants Jacobsen, Niles, and Kornies.

## III.

The defendants first move to dismiss the majority of the plaintiff's claims on the ground that the plaintiff failed to exhaust his administrative remedies with respect to those claims. Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The defendants concede that the plaintiff has exhausted his administrative remedies with respect to his claims against Rhoomes based on her retaliatory conduct and the destruction of his legal papers, his claim against Jones for failure to supervise Rhoomes for those claims, and his claims against Degnan.

However, the defendants argue that the plaintiff has not
exhausted his administrative remedies with respect to all of his
claims against defendants Andino, Van Buren, and Faliski because
he did not grieve any claims against any of these defendants.
The plaintiff concedes that he did not name every defendant in
his grievances, but points out that he described the harassment
and retaliation of which he complains, which he argues is
sufficient to exhaust his remedies with respect to those claims.

A prisoner need not identify an individual defendant in a
grievance to exhaust his remedies against that defendant unless
such identification is required by the prison system's grievance
procedures.  Jones v. Bock, 549 U.S. 199, 218-19 (2007).  Nor is
a prisoner required to "articulate legal theories" in a
grievance in order to exhaust his administrative remedies.
Brownell v. Krom, 446 F.3d 305, 311 n.1 (2d Cir. 2006) (quoting
Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004)).  Rather,
prisoners need only "provide enough information about the
conduct of which they complain to allow prison officials to take
appropriate responsive measures."  Id. at 310 (quoting Johnson,
380 F.3d at 697).

The plaintiff did in fact mention Andino in Grievance No.
9265, but the grievance describes Andino as a bystander and does
not, on its face, make any allegations of harassment or
retaliation.  However, in his appeal statement in Grievance No.

10

9266, the plaintiff alleges that Rhoomes' March 30 IMR against the plaintiff, which Andino signed, was retaliatory.  The plaintiff could not have raised the issue of the IMR in his grievances on March 29 and 30 because he did not receive notice of the IMR until April 2.  The plaintiff could have filed a separate grievance based on the IMR at that time, but it was also reasonable for him to believe that he could raise an additional charge of retaliation in his appeal of the denial of his grievance, when the grievance concerned the same pattern of retaliatory actions.  Cf. Giano v. Goord, 380 F.3d 670, 679 (2d Cir. 2004) (finding reasonable prisoner's attempt to exhaust remedies for disciplinary conviction by filing direct appeal rather than by pursuing separate grievance).  Moreover, the plaintiff's appeal statement in Grievance No. 9266 prominently makes the allegation that Rhoomes filed a "bogus Misbehavior Report" against him to retaliate against him.  These statements create at least an issue of fact whether the plaintiff's appeal statement was "enough to alert the prison to the nature of the wrong for which redress is sought." Johnson, 380 F.3d at 697 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) (internal quotations and alteration omitted).  Therefore, the plaintiff's retaliation claim against Andino based upon Andino's participation in issuing the IMR against the plaintiff may not be dismissed for failure to exhaust.  However, the plaintiff's

remaining claim against Andino for harassing him in the library in violation of the Eighth Amendment will be dismissed for failure to exhaust because the plaintiff made no such allegations against Andino in the grievance process at any time.

The plaintiff did not name Van Buren in either Grievance No. 9265 or 9266 but nonetheless seeks to hold her liable in her supervisory capacity for the alleged acts of Rhoomes and Andino. Because the plaintiff has exhausted his remedies with respect to his harassment and retaliation claims against Rhoomes and his retaliation claim against Andino, the plaintiff is not barred from seeking to hold Van Buren liable as a supervisor for those alleged violations.

With respect to Faliski, the plaintiff did not mention him by name or describe any misconduct in which he was personally involved in either Grievance No. 9265 or 9266. However, the exhaustion requirement does not apply if the plaintiff lacked "available" administrative remedies because of threats made to dissuade the plaintiff from filing a grievance. Hemphill v. New York, 380 F.3d 680, 686-88 (2d Cir. 2004). Whether Faliski's threats rendered grievance procedures unavailable to the plaintiff depends on whether "a similarly situated individual of ordinary firmness" would have deemed them available. Id. at 688 (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)). The plaintiff states that he was deterred from appealing the April

11 disciplinary decision because of Faliski's threats to issue
additional write-ups.  (Aff. ¶ 24.)  The defendants respond that
even if the plaintiff's claim is true, it does not prove that
Faliski's threats deterred him from filing a grievance, because
Faliski only threatened to retaliate against him if he filed an
appeal.  However, it would be reasonable for a prisoner who had
been threatened against filing an appeal to be deterred from
filing a grievance concerning the same conduct.  There is at
least a question of fact whether Faliski's threats would have
deterred a similarly situated prisoner of ordinary firmness from
grieving Faliski's conduct of the April 11 hearing.  The Court
also could not say at this point whether Faliski's threats in
April continued to make grievance procedures unavailable to the
plaintiff in October, when Faliski allegedly added fabricated
weapons charges to the plaintiffs IMRs.  Therefore, the
plaintiff's harassment, retaliation, and due process claims
against Faliski may not be dismissed based on a failure to
exhaust.

     The defendants also assert that the plaintiff has not
exhausted his remedies with respect to him claims against
Jacobsen, Niles, and Kornies because his November 23 Grievance,
which complained about the issuance of the October 5 and 16 IMRs
and his subsequent disciplinary hearings, was untimely.  The
plaintiff argues that he should have received an exception to

the time limit for filing his grievance because he did not have access to his legal papers while he was in a Special Housing Unit.  However, the plaintiff was given an opportunity to offer mitigating circumstances, which he in fact did, and his mitigating circumstances were rejected as insufficient.  Because the plaintiff failed to properly exhaust his remedies and his proffered mitigating circumstances have already been considered and rejected, the plaintiff's claims against Jacobsen, Niles, and Kornies based upon the alleged fabrication of weapons charges are dismissed with prejudice.  See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (proper exhaustion requires compliance with deadlines and other procedural rules); see also Taylor v. Bermudez, No. 03 Civ. 0087, 2003 WL 21664673, at *4 (S.D.N.Y. July 16, 2003) (dismissing complaint with prejudice where plaintiff filed untimely grievance and prison officials had already ruled that mitigating circumstances did not exist); Byas v. New York, No. 99 Civ. 1586963, 2002 WL 1586963, at *3 & n.5 (S.D.N.Y. July 17, 2002) (same).

The defendants also claim that the plaintiff has not exhausted his remedies with respect to his claim against Rhoomes based on the unavailability of the law book he requested or his claims against Jones for failing to supervise the law library and for participating in issuing a false misbehavior report against him.  As an initial matter, the amended complaint does

14

not assert a First Amendment denial of access to the courts
claim against Rhoomes based on the unavailability of the law
book, as opposed to the alleged subsequent destruction of his
legal papers, and the plaintiff did not address this claim in
his opposition.  To the extent that the amended complaint may be
read to state such a claim, however, that claim is dismissed for
failure to exhaust because the plaintiff did not pursue his
grievance complaining of the unavailability of the book.  As
with the claims against Van Buren, the plaintiff's claims
against Jones are based on his liability as a supervisor.
Because the plaintiff did not pursue his grievance about the
unavailability of the law book, he may not bring a claim against
Jones for failing to adequately supervise Rhoomes' management of
the law library.  However, the plaintiff may pursue his claim
that Jones was responsible as a supervisor for Rhoomes'
retaliation against him, because the plaintiff has exhausted his
remedies with respect to the retaliation claim against Rhoomes.

     Lastly, the defendants argue that the plaintiff has not
exhausted his administrative remedies for his conspiracy claim
against any defendant.  To the extent the plaintiff asserts a
conspiracy claim in the amended complaint, the Court agrees.
While Grievance No. 9265 mentions Andino and Degnan, it does not
allege that either officer conspired with Rhoomes or had any ill
motives toward the plaintiff.  The grievance gave prison

15

officials no notice of any conspiracy allegations and would not have enabled them to take appropriate measures to investigate such allegations.  The plaintiff has therefore failed to exhaust his remedies with respect to any conspiracy claims.

### IV.

The defendants move to dismiss the plaintiff's exhausted claims.  Reading the plaintiff's amended complaint liberally, these remaining claims include: (1) Eighth Amendment harassment claims against Rhoomes, Degnan, and Faliski; (2) First Amendment retaliation claims against Rhoomes, Andino, Degnan, and Faliski; (3) First Amendment denial of access to the courts claims against Rhoomes and Degnan; (4) Fourteenth Amendment due process claims against Rhoomes, Andino, and Faliski; and (5) supervisory liability claims against Van Buren and Jones.

### A.

"Harassment may be so drastic as to violate the Eighth Amendment's right to be free from cruel and [unusual] punishment, but only in the harshest of circumstances." Greene v. Mazzuca, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007) (citing Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997)).  For harassment to support an Eighth Amendment claim, it must be objectively and sufficiently serious, meaning that the conduct would be considered "cruel and unusual under contemporary standards." Boddie, 105 F.3d at 861 (quoting Rhodes v. Chapman,

452 U.S. 337, 347 (1981)).  In addition to objectively serious
conduct, the prison official must "exhibit deliberate
indifference to the inmate's significant needs of health or
safety."  Greene, 485 F. Supp. 2d at 451 (citing Farmer v.
Brennan, 511 U.S. 825, 834 (1994)).  Finally, the plaintiff must
allege some injury resulting from the alleged harassment to
state a constitutional claim.  See Purcell v. Coughlin, 790 F.2d
263, 265 (2d Cir. 1986).

The plaintiff's allegations that Rhoomes followed him
around the law library and verbally abused him fall far short of
the objectively serious conduct required to state an Eighth
Amendment claim.  See Greene, 485 F. Supp. 2d at 451
(allegations that prison officials yelled and spit at the
plaintiff and threatened him with time in the SHU did not rise
to level of constitutional violation).  Likewise, the
allegations that Degnan ordered the plaintiff to return to his
cell and that Faliski harassed him and threatened him with
additional write-ups are not sufficiently serious to state an
Eighth Amendment claim.  The plaintiff's claims for verbal abuse
and harassment are therefore dismissed for failure to state a
claim upon which relief may be granted.

**B.**

"[I]n order to survive a motion to dismiss a complaint, a
plaintiff asserting First Amendment retaliation claims must

allege '(1) that the speech or conduct at issue was protected,
(2) that the defendant took adverse action against the
plaintiff, and (3) that there was a causal connection between
the protected speech and the adverse action.'" Davis v. Goord,
320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239
F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by
Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

     At this preliminary stage, the claims of retaliation
against Rhoomes and Andino cannot be dismissed.  The filing of a
prison grievance is a constitutionally protected activity,
Davis, 320 F.3d at 352-53, and it is undisputed that the
plaintiff filed several grievances.  The plaintiff has also
sufficiently alleged adverse actions by claiming that Rhoomes
and Andino falsely wrote him up for misbehavior, see Gill v.
Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004) (alleged filing of
false misbehavior reports that resulted in keeplock sentence was
sufficiently adverse to support First Amendment retaliation
claim), and that Rhoomes destroyed some of his legal papers, see
Smith v. City of New York, No. 03 Civ. 7576, 2005 WL 1026551, at
*3 (S.D.N.Y. May 3, 2005) (holding that destruction of
plaintiff's legal papers was adverse action).  Finally, the
plaintiff's allegations that Rhoomes was angered by the
grievance and that her anger toward the plaintiff prompted the
filing of the IMR and the destruction of his legal papers a few

18

days later are sufficient to support an inference of a causal connection between the grievance and Rhoomes' and Andino's allegedly retaliatory actions.  See Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (defendant's involvement in decision to transfer plaintiff and short time frame between grievance and transfer supported inference that defendant had retaliatory motive), abrogated on other grounds by Porter v. Nussle, 534 U.S. 516 (2002).

Similarly, the plaintiff's allegations also state a claim of retaliation against Faliski.  The plaintiff has alleged that Faliski knew that the March 30 IMR contained fabricated charges but nonetheless found him guilty at his April 11 disciplinary hearing, and thereafter threatened the plaintiff to dissuade him from appealing the decision.  Whatever the ultimate merit to these factual allegations, they suffice at this stage to raise a plausible inference that Faliski found the plaintiff guilty to punish him for the previous grievance he had filed against Rhoomes.  The plaintiff's allegations that Faliski added false weapons charges to his October 5 and 16 IMRs in retaliation for filing this lawsuit similarly state a claim of retaliation.  The retaliation claims against Faliski based on the April 11 hearing and the weapons charges therefore cannot be dismissed at this stage.

C.

To state a First Amendment claim for denial of access to the courts, a plaintiff must allege that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim. Lewis v. Casey, 518 U.S. 343, 353 (1996). The plaintiff alleges that the loss of four pages of his legal papers prevented him from using the documents as exhibits in another court proceeding. However, he does not allege that his inability to file these four pages resulted in any prejudice to his case, for example, as in the dismissal of a complaint or the inability to file responsive papers. Absent such allegations, the plaintiff has not pleaded actual injury. See Odom v. Poirier, No. 99 Civ. 4933, 2004 WL 2884409, at *9 (S.D.N.Y. Dec. 10, 2004) (no denial of access to the courts claim where plaintiff failed to allege specific documents that he was prevented from filing); Ifill v. Goord, No. 03 Civ. 355, 2005 WL 2126403, at *8 (W.D.N.Y. Sept. 1, 2005) (plaintiff failed to plead actual injury where complaint contained no allegations that loss or destruction of his legal mail prevented him from filing a claim, responding to a dispositive motion, meeting a

20

deadline, or complying with an order from any court).
Therefore, to the extent the plaintiff asserts a denial of
access to the courts claim against Rhoomes and Degnan, those
claims are dismissed without prejudice.

### D.

The plaintiff asserts a Fourteenth Amendment due process
claim against Faliski claiming that his April 11 disciplinary
hearing, over which Faliski presided, was unfair and biased.
The plaintiff's amended complaint could also be read to allege
due process claims against Rhoomes and Andino based on the
filing of the allegedly false IMR on which the disciplinary
hearing was based.  However, none of these claims rise to the
level of a due process violation because the only penalty that
the plaintiff received as a result of the disciplinary process
was the loss of commissary, package and phone privileges, and
recreation for fifteen days.  Because these penalties are not an
"atypical and significant hardship," the plaintiff has not been
deprived of a liberty interest.  See Giano v. Selsky, 238 F.3d
223, 225 (2d Cir. 2001) (quoting Sandin v. Conner, 515 U.S. 472,
484 (1995)).  Any due process claims against Rhoomes, Andino, or
Faliski based on the March 30 IMR and the April 11 disciplinary
hearing are therefore dismissed with prejudice.

**E.**

A supervisory official cannot be held liable in a § 1983 action based on respondeat superior.  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  "'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of [her] subordinates,' [she] cannot be liable under section 1983."  Id. at 144-45 (quoting Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987)) (alterations added).  Such personal involvement can be found if the supervisor:

> (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.

Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

A supervisor's mere denial of a grievance is insufficient to establish personal involvement.  See, e.g., Collins, 438 F. Supp. 2d at 420; Lyerly v. Phillips, No. 04 Civ. 4904, 2005 WL 1802972, at *7 (S.D.N.Y. July 29, 2005); Joyner v. Greiner, 195 F.Supp.2d 500, 506 (S.D.N.Y. 2002).  The plaintiff's argument that Van Buren was personally involved in the alleged violations because she denied the plaintiff's grievances is therefore without merit.

However, the plaintiff also alleges that Van Buren was grossly negligent in managing, training, and supervising Rhoomes and Andino and that, as a result, he was injured by Rhoomes' and Andino's "misrepresentation of material facts."  While these allegations are vague, it does appear that the plaintiff's claim is that Van Buren's negligent supervision of those two officials resulted in their retaliation against him.  It could not be said at this stage that this claim is so implausible that it does not state a claim.  See Johnson v. Wright, 234 F. Supp. 2d 352, 364 (S.D.N.Y. 2002) (allegations that prison officials were grossly negligent in supervising their subordinates and that the failure to supervise resulted in constitutional violation were sufficient to survive a motion to dismiss); see also Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 255 (2d Cir. 2001) (allegations that school supervisors were aware of problem but failed to act were sufficient to allege personal involvement based on grossly negligent supervision).  The plaintiff's claim against Van Buren based on her liability as a supervisor for the allegedly retaliatory acts of Rhoomes and Andino therefore cannot be dismissed.

The plaintiff also brings a claim against Jones for the negligent supervision of Rhoomes.  The amended complaint contains sufficient allegations of Jones's personal involvement to state a claim against him based on his liability as a

supervisor.  The amended complaint details a meeting with Jones in which Jones assured the plaintiff that Rhoomes would not retaliate against him, a letter that the plaintiff wrote to Jones about Rhoomes's allegedly retaliatory behavior, and a subsequent meeting with Jones in which the plaintiff showed Jones his legal papers to demonstrate that several pages had been lost or destroyed.  Based on these allegations, the plaintiff's claim against Jones also cannot be dismissed at this stage.

V.

The defendants argue that defendants Van Buren, Kornies, and Niles are entitled to qualified immunity.

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Courts perform a two-part inquiry to determine whether an official is entitled to qualified immunity.  Pearson v. Callahan, 129 S. Ct. 808, 815-18 (2009); Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  First, the Court must undertake a threshold inquiry into whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier, 533 U.S. at 201.  Second, the Court must ask if the right was "clearly established" at the time it was allegedly infringed.  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.  Under the Supreme Court's recent decision in Pearson, 129 S. Ct. at 818, a court may exercise discretion in deciding which of the two prongs of the qualified immunity inquiry to address first.

The claims against defendants Kornies and Niles have been dismissed for failure to exhaust administrative remedies.  The claim against defendant Van Buren cannot be dismissed at this stage because without further factual development, it cannot be said that her alleged failure to supervise was objectively reasonable.

## VI.

The plaintiff has also moved for a preliminary injunction enjoining the defendants and various other prison officials from

retaliating against him during the pendency of this action.  To
obtain a preliminary injunction, the plaintiff must show: "(1) a
likelihood of irreparable harm in the absence of the injunction;
and (2) either a likelihood of success on the merits or
sufficiently serious questions going to the merits to make them
a fair ground for litigation, with a balance of hardships
tipping decidedly in the movant's favor."  Doninger v. Niehoff,
527 F.3d 41, 47 (2d Cir. 2008).

     The plaintiff's request for injunctive relief against the
defendants is without merit because the plaintiff is no longer
housed at Mid-Orange or Woodbourne, and the plaintiff has failed
to show irreparable harm or a likelihood of harassment at his
current facility.  Moreover, the Court may not issue a
preliminary injunction unless notice has been given to the
adverse parties, and the plaintiff's request for injunctive
relief is directed at his former custodians at Woodbourne who
are not parties to this action.  See Fed. R. Civ. P. 65(a);
Salahuddin v. Goord, 467 F.3d 263 (2d Cir. 2006); Weitzman v.
Stein, 897 F.2d 653, 658 (2d Cir. 1990).  Because there is no
indication that Woodbourne prison officials have received notice
of the plaintiff's motion, the Court may not enjoin their
actions.  In any event, the plaintiff has failed to show either
irreparable injury or likelihood of success on the merits if any
claim of continuing injury.

The plaintiff's request for a preliminary injunction is therefore denied.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss or in the alternative for summary judgment is **granted** dismissing all of the plaintiff's claims except for (1) the retaliation claims against Rhoomes, Andino, and Faliski, and (2) the supervisory liability claims against Van Buren and Jones. The plaintiff's motion for a preliminary injunction is **denied**. The Clerk is directed to close Docket No. 48.

SO ORDERED.

Dated:    New York, New York
          February 18, 2009

John G. Koeltl
United States District Judge

27