UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

SAMUEL DAVIS,

                    Plaintiff,              07 Civ. 6592 (JGK)

          - against -                       MEMORANDUM OPINION
                                            AND ORDER
CORRECTION OFFICER RHOOMES, ET AL.,

                    Defendants.
————————————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Samuel Davis ("plaintiff"), proceeding pro
se, brings this action pursuant to 42 U.S.C. § 1983 against
Correction Officer Aretha Rhoomes ("Rhoomes"), Correction
Officer Sabrina Andino ("Andino"), Correction Lieutenant Paul
Faliski ("Faliski"), Deputy Superintendent of Programs Robert
Jones ("Jones"), and Superintendent Diane Van Buren ("Van
Buren").  The plaintiff alleges that, while he was incarcerated
at the Mid-Orange Correctional Facility, defendants Rhoomes,
Andino, and Faliski retaliated against him for filing a
grievance and this lawsuit, in violation of his rights under the
First Amendment to the United States Constitution.  The
plaintiff also alleges that Defendant Jones negligently
supervised Defendant Rhoomes, and that Defendant Van Buren was
grossly negligent in managing, supervising, and training
defendants Rhoomes and Andino, leading to their retaliatory
acts.

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  They contend that they took no adverse action against the plaintiff; that they had legitimate bases for their allegedly retaliatory acts; and that no causal connection exists between the plaintiff's protected activities and their allegedly retaliatory acts.  The defendants also argue that the plaintiff cannot establish the personal involvement of defendants Van Buren and Jones, and that those defendants thus cannot be held liable on a theory of supervisory liability.  Finally, the defendants contend that defendants Rhoomes, Andino, Faliski, and Jones are entitled to qualified immunity.

The plaintiff has opposed the motion for summary judgment and moved to preclude the defendants from relying on certain documents in the litigation, arguing that they have been altered or otherwise fabricated.

Both motions were referred, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), to Magistrate Judge Theodore H. Katz, who issued a Report and Recommendation on July 8, 2010.  The Court has received and reviewed the Report and Recommendation, which recommends that the defendants' motion be granted in part and denied in part, and the plaintiff's motion be denied.  The Court has also reviewed the defendants' objection to the Report and Recommendation, which objects to the Magistrate Judge's

conclusion that the defendants' motion for summary judgment should be denied both on the merits and on qualified immunity grounds as to Officer Rhoomes's alleged retaliatory filing of a false misbehavior report.  Finally, the Court has reviewed the plaintiff's objections to the Report and Recommendation, which object to the Magistrate Judge's conclusion that summary judgment should be granted to the defendants on the plaintiff's remaining claims and his conclusion that the plaintiff's motion to preclude should be denied.

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court has reviewed de novo the Magistrate Judge's disposition of the disputed issues.  Having conducted a de novo review, for the reasons explained below and in the Magistrate Judge's thorough Report and Recommendation, the Court finds that the objections are unfounded, and adopts the findings of Magistrate Judge Katz's Report and Recommendation.

I.

The following is a summary of the relevant facts.  Except as otherwise noted, they are undisputed and drawn primarily from the parties' affidavits and statements pursuant to Local Civil Rule 56.1 of the Southern District of New York.

**A.**


Plaintiff is a prisoner in the custody of the New York State Department of Correctional Services ("DOCS"), and at all relevant times, was an inmate at Mid-Orange Correctional Facility ("Mid-Orange").  Beginning in March 2007, over a period of three weeks, the plaintiff requested, on several occasions, a statutory law book from the Mid-Orange law library.  Although inmates are not permitted to check out books from the law library for any extended period of time, on each occasion, the plaintiff was told that the book was checked out.

On March 25, 2007, an incident ensued and Rhoomes issued a verbal warning to the plaintiff.  This verbal warning was documented by Defendant Rhoomes in the Mid-Orange Law Library Warnings/Ticket Log.  The plaintiff denies that he was issued a warning or that there was a basis for the warning.

The day after the incident, the plaintiff filed a grievance against Rhoomes, in which he alleged that she deprived him of access to the library's resources by permitting other inmates to take books to their housing areas for multiple days at a time.  This grievance was referred to Jones, who was the Deputy Superintendent of Programs at Mid-Orange.  After reviewing the grievance, Jones met with Rhoomes, and the grievance was "informally resolved" on March 29, 2007, after the book was

located and set aside for the plaintiff's use.  The plaintiff
asserts that Jones told him that Rhoomes would not retaliate
against him for filing his March 26 grievance.  Jones neither
admits not denies this allegation.

Also on March 29, 2007, the plaintiff returned to the law
library to photocopy legal papers.  He gave the papers to
Rhoomes to photocopy, as was customary at Mid-Orange.  He then
asked her for the missing book.  Rhoomes brought the plaintiff
to the book clerk's desk to sign out the book.  Shortly
thereafter, Rhoomes allegedly heard the slamming of books and
the plaintiff speaking in a loud voice to the book clerk.  She
told the plaintiff that he was causing a disturbance, and issued
him another verbal warning.

The plaintiff denies that he was disruptive or that he
received a verbal warning on March 29.  Instead, he claims that
it was Rhoomes who acted inappropriately, and he filed second
grievance for what he perceived as retaliation for his earlier
grievance about the missing book.  According to the plaintiff,
Rhoomes harassed him and failed to safeguard the papers he gave
her to copy, exposing them to potential loss or destruction by
other inmates in the library.  Rhoomes denies that she
mishandled the defendant's papers.

On March 30, 2007, the plaintiff again returned to the
library.  Rhoomes was in the back of the library near the

photocopier, speaking to Andino, another correction officer. According to Rhoomes, the plaintiff interrupted the conversation and yelled, "you got my copies." Rhoomes allegedly directed the plaintiff to stop yelling, but the plaintiff ignored her. The plaintiff allegedly became "belligerent and irate," and Andino asked him to step outside of the library and speak with her privately. Rhoomes followed them out of the library and reminded the plaintiff that she had already spoken to him twice about his disruptive behavior. Rhoomes then returned to her desk and called the area supervisor. When the supervisor arrived, according to his declaration, he attempted to intervene, but the plaintiff was "argumentative," and "visibly aggravated, upset, and angry." He instructed the plaintiff to return to his cell to calm down. The plaintiff was then given his original legal papers and their photocopies before leaving the library, although he claims that certain pages were missing.

Based on the events of March 30, 2007 and the two previous verbal warnings, Rhoomes issued the plaintiff a misbehavior report, charging him with creating a disturbance, violating a direct order, and interfering with an employee. Andino signed the report as a witness to the incident, and the supervising officer signed it based on his conversations with Rhoomes and Andino. The plaintiff denies all of the allegations in the

misbehavior report, and claims that he never raised his voice in the library or was otherwise disruptive.

The plaintiff also filed a third grievance, in which he claimed that Rhoomes harassed him and lost or destroyed three of the 71 pages of legal papers he had left for photocopying, again in retaliation for his first grievance against Rhoomes.

On April 5, 2007, Jones investigated the plaintiff's second and third grievances. Ultimately, he concluded in a memo to Van Buren, the superintendent of the facility, that "[t]here clearly is a perception on the part of [the plaintiff] that there is retaliation[, but] . . . I find no harassment on the part of Rhoomes." Van Buren signed the official denial of both grievances, and the plaintiff unsuccessfully appealed the denials. The plaintiff contends that Van Buren "failed to adequately investigate" his claims of harassment against Rhoomes. He also contends that Van Buren knew or should have known that the misbehavior report written by Rhoomes, and signed by the Andino, was false, because the law library's photocopier was not operational, despite Rhoomes's statement in the report that she was making photocopies in the law library on that day. Van Buren claims that she "do[es] not recall personally receiving any complaints from inmates about the operation of the law library" or defendants Rhoomes or Andino.

**B.**


On April 7, 2007, and continuing on April 11, 2007,
Faliski, a correction lieutenant at Mid-Orange, conducted a
disciplinary hearing on the misbehavior report.  At the hearing,
the plaintiff called two inmate witnesses and Andino to testify.
He also testified on his own behalf.  The plaintiff requested
that Rhoomes and Jones testify, but Faliski denied this request.
Faliski also declined to hear the testimony of Jones, on the
ground that he was not present in the library during any of the
incidents.  Faliski denied the plaintiff's request to call
Rhoomes on the ground that she was the writer of the misbehavior
report, and "her testimony would only prove to be redundant."
Faliski reviewed the plaintiff's grievances against Rhoomes.
The plaintiff did not have any procedural objections to the
disciplinary hearing.

After hearing all of the evidence, Faliski found the
plaintiff not guilty of creating a disturbance, but guilty of
interfering with an employee and refusing a direct order.  He
imposed a penalty of fifteen days' loss of recreation, packages,
commissary, and telephone access.  Faliski advised the plaintiff
of his right to file an appeal and supplied the plaintiff with
an appeal form.  The plaintiff contends, however, that after the
hearing concluded, Faliski threatened to have the plaintiff

charged with further violations if he filed an appeal. Faliski
denies this allegation, although plaintiff did not appeal the
decision.

The plaintiff has proffered additional facts that he claims
undermine the veracity of the misbehavior report and the
validity of the disciplinary proceeding. Chief among them, he
points to a statement by Rhoomes that she was making photocopies
in the library at the time of the March 30 incident. The
plaintiff argues that the law library photocopier was out of
service for the entire month of March 2007. As support, he
submits a response to a Freedom of Information Law request that
states that, as of August 2007, the machine "ha[d] been down
since 11/06."

Additionally, the plaintiff claims that he overheard
Faliski coaching Andino prior to her testimony at the
disciplinary hearing. However, Andino wrote a memo to Jones
several days before the hearing, in which her version of the
events of March 30 parallels the testimony she gave at the
hearing.

C.

The plaintiff filed the initial Complaint in this action on
July 23, 2007. Service was made on Rhoomes, Andino, and Faliski

on October 2, 2007.  Three days later, the plaintiff was issued
a misbehavior report by Correction Officer Fox, a non-party.
Officer Fox had discovered two large stones wrapped inside a
towel in the plaintiff's possession.  The plaintiff was charged
with possession of a weapon, possession of contraband, and
possessing property in an unauthorized area.  Faliski, in his
role as a lieutenant and a disciplinary review officer, reviewed
this report on October 9 and, pursuant to a DOCS Directive,
determined that the appropriate disciplinary level for the
charges was Tier III.

        The plaintiff alleges that Faliski added the weapons charge
to the report in retaliation for the filing of this action,
which resulted in the Tier III, as opposed to Tier II,
classification.  In support, the plaintiff has submitted a copy
of the October 5 misbehavior report that has a notation in the
corner that reads "II" and "III."  The defendants' copy of the
report has only a "III" on it.  The plaintiff contends that the
defendants altered this document to conceal the original Tier II
classification.

        On October 15 and 16, 2007, a disciplinary hearing was held
on the charges in the misbehavior report.  As the officer who
reviewed the report, Faliski did not act as the hearing officer
in this proceeding.  The plaintiff pleaded guilty to the charges
of possessing contraband and possessing property in an

unauthorized area, and not guilty to the charge of possessing a
weapon, claiming that he had the towel and rocks as some sort of
rehabilitation device for an injured knee.  Because the
plaintiff admitted to possessing these items, however, and they
were considered weapons at Mid-Orange, the plaintiff was found
guilty of possession of a weapon, and received a penalty of
sixty days in keeplock and sixty days' loss of privileges.

Later on October 16, 2007, Correction Officer Korines, a
non-party, issued the plaintiff another misbehavior report after
he recovered from the plaintiff's cell a white sock with a rock
inside, approximately four inches long and weighing 1.6 pounds,
as well as other contraband.  The items were discovered when
packing up the plaintiff's belongings to move him to keeplock
based on the October 5 charge.  The charges in the October 16
report were identical to the charges in the October 5 report.
Faliski again reviewed this report, and classified it as a Tier
III offense for the same reasons as the October 5 report.  At a
disciplinary hearing on October 22 (again conducted by a
different officer), the plaintiff pleaded not guilty to all
charges, claiming that he had the rock for physical therapy.
Because he admitted to possessing the contraband, however, he
was found guilty of all of the charges.  A penalty of sixty days
in keeplock and sixty days' loss of privileges was once again
imposed.  Because the plaintiff was already serving time in

11

keeplock on account of his prior violation, his sentence was suspended and deferred pending good behavior.

On December 27, 2007, the Central Office Review Committee ("CORC") issued a decision on the plaintiff's appeal of the October 16 hearing.  It dismissed the charge of possession of a weapon stemming from the October 5 incident.  No reason was given for that decision.  The plaintiff contends that without the weapons charge, which he alleges Faliski unilaterally added to the misbehavior report in retaliation for this action, he would not have been put in keeplock for 60 days.  However, the CORC upheld the penalty imposed, even after dismissing the weapons charge.

## II.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship., 22 F.3d 1219, 1223 (2d Cir. 1994).  "The trial court's

12

task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them.  Its duty,
in short, is confined at this point to issue-finding; it does
not extend to issue-resolution." Gallo, 22 F.3d at 1224. The
moving party bears the initial burden of "informing the district
court of the basis for its motion" and identifying the matter
that "it believes demonstrates the absence of a genuine issue of
material fact." Celotex, 477 U.S. at 323.  The substantive law
governing the case will identify those facts that are material
and "only disputes over facts that might affect the outcome of
the suit under the governing law will properly preclude the
entry of summary judgment." Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).

    In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (citing
United States v. Diebold, Inc., 369 U.S. 654 (1962); see also
Gallo, 22 F.3d at 1223.  Summary judgment is improper if there
is any evidence in the record from any source from which a
reasonable inference could be drawn in favor of the nonmoving
party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d
Cir. 1994).  If the moving party meets its burden, the burden

shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial."  Fed R. Civ. P. 56(e).  The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion.  See McPherson v. Coombe, 174 F.3d 276, 279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

### III.

### A.

To support a retaliation claim under the First Amendment, the plaintiff must demonstrate that (1) he engaged in a protected activity; (2) the defendant took adverse action

14

against him; and (3) there was a causal connection between the protected activity and the adverse action.  See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004).  The court must "examine prisoners' claims of retaliation with skepticism and particular care," because of "the near inevitability of decision and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation can be fabricated."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted).

Filing a prison grievance is a protected activity.  See Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001); Gayle v. Gonyea, 313 F.3d 677, 683 (2d Cir. 2002).  To satisfy the second prong of a retaliation claim in the prison context, "[o]nly retaliatory conduct that would deter similarly situated individuals of ordinary firmness from exercising their . . . constitutional rights constitutes an adverse action . . . ."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  The third prong of a retaliation claim requires a causal connection between the protected speech and the adverse action.  In order to show causation, the protected conduct must be "a substantial or motivating factor for the adverse actions taken by prison officials."  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).  Facts suggesting causation may be circumstantial.  Id. at 139.

If a plaintiff succeeds in establishing each of the three prongs of a retaliation claim, a defendant may still meet its burden on summary judgment if the defendant can demonstrate that the defendant would have taken the same action against the plaintiff absent any retaliatory animus.  See Gayle, 313 F.3d at 682.  "A finding of sufficient permissible reasons to justify state action is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority."  Graham, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).  Nevertheless, a defendant must set forth undisputed facts demonstrating that the challenged action clearly would have been taken on a valid basis alone.  Davidson v. Chestnut, 193 F.3d 144, 149 (2d Cir. 1999) (per curiam).

### i.

The defendants object to the Magistrate Judge's conclusion, in the Report and Recommendation, that their motion for summary judgment should be denied in part as to the plaintiff's claim for retaliation against Rhoomes.  In the Report and Recommendation, Magistrate Judge Katz found that summary judgment was not appropriate as to the plaintiff's claim that Rhoomes had filed a false misbehavior report against him.

Report and Recommendation at 34.  Specifically, the defendants allege that the plaintiff has failed to show a genuine issue of material fact as to a causal connection between the filing of a grievance (the protected activity at issue) and Rhoomes's filing a misbehavior report (the adverse action at issue). Specifically, the defendants contend that summary judgment is appropriate because Rhoomes has set forth evidence tending to show that she had a legitimate basis for filing the misbehavior report.  Additionally, the defendants contend that, even if the plaintiff has made out a prima facie case for retaliation, Rhoomes has carried her burden of showing that the plaintiff would have received the same punishment even absent a retaliatory motive.  Finally, the defendants argue that Rhoomes is entitled to summary judgment on the basis of qualified immunity.

The defendants' objections are without merit.  The defendants rely on the fact that Rhoomes adduced substantial evidence that her description of the events leading up to the misbehavior report was accurate, and therefore that it was the plaintiff's misconduct that caused the filing of the misbehavior report and not his filing of a grievance against Rhoomes. However, as the Magistrate Judge found, the plaintiff also adduced evidence to support his contention that a prima facie case of retaliation existed.  That evidence includes (1) the

close temporal proximity between the plaintiff's grievance and
Rhoomes's misbehavior report and (2) Faliski's determination
that one of the charges in Rhoomes's misbehavior report was
unfounded.  While the plaintiff's evidence of a causal
relationship between the protected activity and the adverse
action is not overwhelming, it is nonetheless sufficient to
survive a motion for summary judgment.

    Moreover, the defendants have not carried their burden of
showing that the same adverse action would have been taken even
absent a retaliatory animus.  In support of this contention,
they point to Faliski's finding that the plaintiff was guilty on
the two charges in Rhoomes's report.  In order for the
defendants to carry their burden, however, it is not enough that
they allege that the allegedly retaliatory actions could have
been taken absent a retaliatory animus – i.e., that there was a
possible legitimate basis for the challenged actions.  Rather,
the defendants must establish that the actions would have been
taken, even absent impermissible motives.  See Gayle, 313 F.3d
at 682; Graham, 89 F.3d at 79.  The fact that two charges were
affirmed at the misbehavior hearing does not, standing alone,
entitle the defendants to summary judgment.

    As the Magistrate Judge correctly noted, the parties have
presented sharply contrasting accounts of the events of March
30, 2007, either of which could be accepted as true by

reasonable jurors.  The plaintiff denies committing any of the prohibited conduct, while Rhoomes contends that the plaintiff's misbehavior justified the issuance of the misbehavior report.  A reasonable juror could accept the plaintiff's account, in which case Rhoomes would have no justification for the issuance of her report.  Thus, the question of whether Rhoomes's acts were retaliatory or justified "runs to matters of credibility and weight of the evidence, which are matters for the jury." Graham, 89 F.3d at 81.  The Court need not reconcile the parties' incompatible stories at the summary judgment stage. See Gayle, 313 F.3d at 684.

Finally, the defendants argue that Rhoomes is entitled to summary judgment on the issue of qualified immunity.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  There is no dispute that at the time of the allegedly false misbehavior report, it was clearly established that a prison official could not retaliate against a prisoner for filing a grievance.  See Rivera v. Senkowski, 62 F.3d 80, 85 (2d Cir. 1995).

The defendants cast the issue, implausibly, in terms of there being "no law prohibiting the issuance of a misbehavior

report to a disruptive inmate, as long as that basis – breaking prison rules – exists and there is no evidence that the sole motivation is retaliatory."  However, as noted by Magistrate Judge Katz, a prisoner's First Amendment right not to be retaliated against for filing grievances is clearly established. See Rivera v. Senkowski, 62 F.3d 80, 85 (2d Cir. 1995). Construing the evidence in the light most favorable to the plaintiff, it cannot be said that Rhoomes could reasonably believe that it was lawful for her to issue a false misbehavior report in response to the plaintiff's grievance against her. The defendants assume that the plaintiff's version of the facts is untrue, which cannot be assumed for purposes of a motion for summary judgment.

Therefore, there is no merit to the defendant's objection to the Magistrate Judge's conclusion that summary judgment should not be granted as to the plaintiff's claim that Rhoomes filed a false misbehavior report in retaliation for his filing a grievance against her.

**ii.**

The plaintiff has also filed objections to the Magistrate Judge's Report and Recommendation.  He claims that some of the facts relied upon by the Magistrate Judge were incorrect, but

these alleged inaccuracies are not material in any way, and the plaintiff has not explained how they might be relevant to the determination of any issue.  Moreover, the plaintiff repeats many of his arguments against the defendants, but he does not respond to the detailed legal analysis of the Magistrate Judge, which the Court finds persuasive.  Accordingly, the plaintiff's objection to this portion of the Report and Recommendation is without merit.

**B.**

Finally, the plaintiff objects to the Magistrate Judge's conclusion that his motion to preclude much of the defendants' evidence should be denied.  The Magistrate Judge found that the "[p]laintiff's claims of document tampering are simply speculative and conclusory," and thus should be "flatly rejected."  Report and Recommendation at 21.  This conclusion is supported by the record, which reflects no evidence whatsoever of the document tampering and fabrication alleged by the plaintiff.  As is the case with his other objections to the Report and Recommendation, the plaintiff does not respond to the Magistrate Judge's legal analysis on this point or amplify on his argument at all.  Rather, he merely repeats his unsupported allegations of tampering.  As a result, the plaintiff's

objection to this portion of the Report and Recommendation will be overruled.  Any objections to the admissibility of evidence can, of course, be raised at trial, and any proposed trial evidence must comply with the Federal Rules of Evidence.

## CONCLUSION

For the foregoing reasons, the parties' objections to the Magistrate Judge's Report and Recommendation are denied, and the Report and Recommendation is adopted in its entirety. Accordingly, the defendants' motion for summary judgment is **granted in part and denied in part**, and the plaintiff's motion to preclude is **denied**.  The Clerk is directed to close **Docket Nos. 87 and 91**.

SO ORDERED.

Dated:     New York, New York
           September 30, 2010

                                    John G. Koeltl
                            United States District Judge